517 A.2d 910

**GENE & HARVEY BUILDERS, INC., Appellee,**

**v.**

**PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1986.
Decided Nov. 17, 1986.

Joseph J. May, Plate, Shapira, Hutzelman, Berlin, May, Walsh & Brabender, Erie, for appellant.

William Kuhn, Sharon, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT

FLAHERTY, Justice.

At issue in this case is whether a general liability insurance policy, written in what has become a standard form,

obligates the insurance company to defend and indemnify its insured, a building contractor, against a lawsuit filed by a homeowner who claims that his house, constructed by the insured contractor, has become uninhabitable because it was negligently built on land which has subsided.

Although the present lawsuit is between Gene & Harvey Builders, Inc. (hereinafter "the contractor") and Pennsylvania Manufacturer's Association Insurance Company (hereinafter "the insurance company"), the underlying dispute is between the homeowners, Marion and Erna D'Augostine, and the contractor.

In October of 1979 the D'Augostines purchased a parcel of land in Neshannock Township, Lawrence County, Pennsylvania from Merritt Estates, Inc. At about the same time, they contracted with Gene and Harvey Builders to construct a house on this parcel of land. The house was completed and delivered on March 1, 1980, and the D'Augostines moved in. In February of 1982, however, the homeowners filed a complaint in the Lawrence County Court of Common Pleas against Merritt Estates and the contractor. This complaint alleged that the land had subsided and fallen away from the premises, and that this, along with defects in construction, caused doors to come ajar and floors to become unstable. The complaint further stated that the house was useless because of the subsidence and that sinkholes and subsidence on the land were known or should have been known to both the seller of the land and the contractor. Further, it was alleged that the subsidence was concealed by filling in sinkholes.

Subsequently, in an amended complaint, the D'Augostines claimed that the construction was performed negligently and in an unworkmanlike manner with knowledge of the defects and subsidence of the land. They also claimed that the contractor misrepresented the true condition of the land with respect to subsidence. After the amended complaint was filed, the D'Augostines filed for bankruptcy and a demurrer to this amended complaint was granted because the D'Augostines were no longer the real parties in interest.

However, on December 1, 1982, a trustee in bankruptcy for the D'Augostines instituted an action on the same subject matter against Merritt Estates, Inc. and Gene and Harvey Builders, Inc. in the Court of Common Pleas of Lawrence County. This complaint contains the following allegations, some of which are identical to those in the earlier complaint:

PARAGRAPH 11. That defects have become apparent in recent months in said construction of dwelling and in the land caused by undermining for minerals and subsidence as a result of said undermining.

PARAGRAPH 13. That sinkholes and subsidence were apparent on said land and said condition was known or should have been known to Merritt Estates, Inc., and Gene & Harvey Builders, Inc. That in addition to the condition being apparent on said land, the predecessors in ownership from whom Merritt Estates, Inc. purchased said land actually mined said land, creating the conditions which caused the subsidence. The said mining was known or should have been known by Defendants. Further, the contractor filled in sinkholes on the premises sold to the D'Augostine's [sic] under cover of darkness in order to perpetrate fraud.

* * * * * *

PARAGRAPH 29. That said residential dwelling was constructed negligently and in an unworkmanlike manner with knowledge of the defect and subsidence of the land on which said residential dwelling was constructed; that said dwelling has been rendered unfit, unsafe, and uninhabitable as a result of the actions of Defendant second named [Gene and Harvey Builders].

* * * * * *

PARAGRAPH 31. That Gene & Harvey Builders, Inc. Defendant second named, constructed said premises with knowledge of the defects in said land and with knowledge of said subsidence on said land and misrepresented the true condition of said premises and concealed its true condition, all of which is more specifically set forth in

Paragraphs 11 and 13 of the Complaint. [Reproduced above.]

During the time the D'Augostines' action arose, Gene & Harvey Builders, Inc. (the contractor) was insured under a general liability insurance policy in standard form underwritten by Pennsylvania Manufacturers Association Insurance Company. The policy is intended to grant comprehensive general liability insurance coverage. After receiving the complaints filed by the D'Augostines as well as the complaint subsequently filed by the trustee in bankruptcy, the contractor delivered to Pennsylvania Manufacturers Association Insurance Company copies of the original and amended complaints. The insurance company at first undertook a defense of the contractor, its insured, but subsequently notified the contractor that it was denying coverage under the policy and declined to proceed further with the defense of the case. Consequently, the contractor provided his own defense and has filed the present separate action for declaratory judgment in the Court of Common Pleas of Mercer County, requesting a judicial interpretation of the coverage provided by its comprehensive general liability policy with Pennsylvania Manufacturers Insurance Company. Both parties moved for summary judgment, and the Court of Common Pleas of Mercer County granted the motion in favor of the contractor. Superior Court affirmed, relying on the trial court's opinion.

At issue in this appeal is whether the lower courts erred in holding that Pennsylvania Manufacturers Insurance Company is required by the terms of the policy to defend and indemnify the contractor.

Gene & Harvey Builders contends that the lower courts did not err and that coverage is afforded under the following policy provisions:

1. COVERAGE B—PROPERTY DAMAGE LIABILITY
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily liability or

Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

The policy defines "occurrence" as:

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. . . .

Pennsylvania Manufacturers Insurance Company, on the other hand, asserts that coverage should be denied under the following exclusions:

(n) . . . property damage to the named insured's products arising out of such products or any part of such products;

(o) . . . property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) . . . damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

As this Court stated in *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 304–305, 469 A.2d 563, 566 (1983), the principles which Pennsylvania courts apply in interpreting contracts of insurance are well established: [1]

---

1. This writer joined the Concurring Opinion authored by Mr. Justice Hutchinson in *Standard Venetian Blind,* which places the "focus on whether an insured who is asked to replace or return the price of his own failed product could *reasonably expect* coverage from his liability carrier." (Emphasis supplied.) This view, however, did not com-

The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. See *Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979); *Community College of Beaver County v. Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977). The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. See *Mohn v. American Casualty Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1974). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. See *Mohn v. American Casualty Co. of Reading*, supra. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. See *Pennsylvania Manufacturers' Ass'n. Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). "[I]n the absence of proof of fraud, 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.'" *Olson Estate*, 447 Pa. 483, 488, 291 A.2d 95, 98 (1972), quoting *Orner v. T.W. Phillips Gas & Oil Co.*, 401 Pa. 195, 199, 163 A.2d 880, 883 (1960).

These principles, applicable to insurance contracts, are in actuality, not essentially dissimilar to traditional principles governing the interpretation of any contracts: the goal is to determine the intent of the parties, and in the absence of ambiguity, the plain meaning of the agreement will be enforced. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982). Because there is no ambiguity in the language of the insurance contract involved in this case, we turn to the claims made in the complaint and their relation to the language of the insurance contract.

The complaint alleges that the contractor performed negligently and in an unworkmanlike fashion, that he concealed

mand a majority of the Court, but its application would reach the same result in the case sub judice.

the presence of sinkholes and filled them under cover of darkness, and that he misrepresented the condition of the premises to the buyer-homeowners. All these claims are excluded from coverage either because they are not "occurrences," i.e., accidental events, or because they fall under either exclusion (n) or exclusion (o).

■ The alleged intentional concealing of the condition of the land or the alleged intentional misrepresentation are not "occurrences" under the policy, for an intentional act is not an accident (and only accidents are covered).

■ The alleged negligence is also excluded from coverage because it clearly falls under both exclusions (n) and (o). As to exclusion (n), (damage to the contractor's product arising out of any part of the product), all the claims concern damage to the insured's product (the house) arising from *a part of the product*, i.e., a builder's duty to be reasonably prudent in the placement of a house. One does not contract for the building of a house in the sky; of necessity, houses must rest on the earth. Assumed is that part of the contractor's work product will be to act prudently in placing the house on the lot. Reasonable inspection of the lot and representing the condition of the lot to the owner are, in short, part of the work of building a house, which is the "product" of a contractor.

■ Similarly, in the case of exclusion (o) (damage to work performed by the contractor arising out of any portion of the work), all the negligence assertions in the complaint concern damage to the work (the building of the house, i.e., a building fit for habitation) arising out of any portion of the work—using reasonable care to inspect the ground to see that it is normally sound, filling in holes which were present in the ground, and representing to the homeowner-buyers that the land had or did not have certain characteristics.

Whether the contractor was negligent or whether he intentionally deceived the homeowners is not at issue in this case. He may or may not be so adjudicated at trial. What

is at issue is whether the wrong alleged in the complaint is covered by the policy or whether it is excepted by an exclusion. *Because intentional conduct is not covered by the policy, and because the alleged negligent conduct— whether it was actually negligent or not—arises from the product and the work, it is clearly subject to exclusions (n) and (o).*

Reversed.[2]

NIX, C.J., and HUTCHINSON, J., file a concurring opinion.

LARSEN, J., files a dissenting opinion.

NIX, Chief Justice, concurring.

Although I agree with the result reached in this case, it is incumbent upon me to explain the rationale employed since I do not share the view expressed by the majority of this Court in *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 304–305, 469 A.2d 563, 566 (1983). In the dissent in that case I noted that both the view expressed by the majority and that expressed by the concurring members of the *Standard Venetian Blind* Court were "equally nebulous and neither is appropriate in the area of insurance contract interpretation." *Id.*, 503 Pa. at 321, 469 A.2d at 574. I then proceeded to set forth the view I deemed appropriate.

An insurance contract is essentially a contract of adhesion. Its terms are not bargained for but rather dictated by the insurer. Thus the insured's awareness and understanding of exclusions set forth in an insurance policy should not be presumed from the mere presence of such exclusions among the policy's terms. The very fact that the insurer prescribes particular exclusions indicates an assumption that the purchaser could otherwise reasonably expect to be covered against the risk so excluded.

---

**2.** Had the contractor wanted to protect himself against damage to his own product, such coverage is available by so-called builder's risk insurance or a performance bond. *See Pittsburgh Bridge & Iron Works v. Liberty Mutual Insurance Co.*, 444 F.2d 1286 (3d Cir.1971).

It is therefore crucial that the insurer explain and the insured understand the precise nature of the policy's limitations. For this reason I would apply the test adopted by the Superior Court in *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), employed by both that court and the trial court in this matter, and hold the insured to a standard of proving the insured was aware of and fully appreciated the effect of exclusions in the insurance policy before permitting the insurer to escape its duty to defend the insured.

*Id.*, 503 Pa. at 321, 469 A.2d at 574.

This reasoning is applicable where an uninitiate is seeking insurance coverage. In this case appellee was a contractor by trade who, in the performance of regular business, was required to secure insurance coverage of this nature. In such a situation the inequality of bargaining power between the insured and the company that I referred to in my analysis in *Standard Venetian Blind* is not present. Since there was no ambiguity in the language of these exclusions and, since I agree with the majority's determination of their applicability, I concur in the mandate entered in this case.

HUTCHINSON, Justice, concurring.

I concur in the result. The majority opinion correctly states existing law. However, as noted by the majority writer, at 430 n. 1, I believe that the issues presented here can be better analyzed using the rationale set forth in my concurring opinion in *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1981).

LARSEN, Justice, dissenting.

I dissent and in support thereof adopt the opinion of the Court of Common Pleas of Mercer County, No. 32 C.D. 1983, authored by The Honorable Albert E. Acker.

The following is Judge Acker's Opinion:

## OPINION

ACKER, Judge.

This case is before this Court upon a Motion for Reconsideration in that *Standard Venetian Blind Co. v. American Empire Insurance Co.*, [503] Pa. [300], 469 A.2d 563 (1983), reversed *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974). *Hionis* is no longer the Pennsylvania law where a policy of insurance is written in unambiguous terms and the parties are not in a position of inequality of bargaining power. Both parties were given the opportunity to present testimony and declined.

The plaintiff does not contend the existence of an inequality of bargaining power between himself and the defendant insurance company.

The plaintiff admits in paragraph 5 of its Motion to Reconsider that the decision should be reconsidered because *Hionis* no longer espouses a correct standard, in view of *Standard Venetian Blind Company v. American Empire Insurance Co., supra.*

Our two previous Opinions and Orders were entered because of the failure of the defendant, through its Pleadings, Answers to Interrogatories, or Affidavits to explain to the plaintiff the exclusions (n), (o) and (p), which are relied upon by the defendant, as was required by *Hionis v. Northern Mutual Insurance Company, supra.* Since such an explanation is no longer required, this Court must now examine the other contentions previously raised by the plaintiff as to why a Summary Judgment should be entered which have not been considered.[1]

The two principal issues raised by the plaintiff are whether the plaintiff is entitled to coverage under the policy under the doctrine of reasonable expectation of coverage and whether policy exclusions (n), (o) and (p) are applicable

---

1. Prior to oral argument upon the most recent Motion for Reconsideration, both parties agreed that this Court can decide the Motion for Reconsideration even though the matter is on appeal. This position is in accordance with the view expressed in this Court's second Opinion which was rendered after the appeal had been perfected.

to the negligent actions brought by the D'Augostines at 211 of 1981, and by Calaiaro, trustee at 1007 of 1982, Lawrence County Court of Common Pleas.

## I. IS THE PLAINTIFF, GENE & HARVEY BUILD-ERS, INC., ENTITLED TO COVERAGE UNDER THE DOCTRINE OF REASONABLE EXPECTA-TION OF COVERAGE?

The doctrine of reasonable expectation of coverage was briefed and argued by counsel at the outset of this case. We did not previously consider or apply that doctrine in the resolution of the matter, for the case was decided under *Hionis* and its progeny. The plaintiff is again requesting application of the doctrine, but is faced with two sizeable problems. First, whether the reasonable expectation doctrine was ever a part of our law; and second, if it was, what is the state of health of the doctrine in view of the near demise of *Hionis*.

The closest that the plaintiff can state Pennsylvania has come to embracing the reasonable expectation doctrine was in *Sands v. Granite Mutual Insurance Co.*, 232 Pa.Super. 70, 331 A.2d 711 (1974). Even in *Sands*, however, the plaintiff can only assert that the doctrine was "tacitly supported" in Pennsylvania.[2] Sands, however, is readily distinguishable from the case at bar. In *Sands* the plaintiff had requested coverage so that he would be fully insured from an insurance agent which was found to be the representative of the defendant. The plaintiff signed an application form in blank, leaving the insurance agent to fill in the information. Prepayment was accepted and the application and monies were forwarded to the insurance company for approval. The insurance agent neither explained nor mentioned to the plaintiff that the insurance application carried

**2.** The plaintiff by brief, pp. 22–24 cites the authorities and cases from 20 Am Jur. Proof of Facts, 2d 59 (1979), which it is claimed have adopted the reasonable expectation doctrine. Pennsylvania is not among those states listed. By that authority, Pennsylvania has "tacitly supported" the doctrine in *Sands v. Granite Mutual Insurance Co., supra.*

a waiver of uninsured motorist coverage. This could have been obtained by the mere payment of two additional dollars. The agent, without instructions from the insured, checked the box indicating that the insured did not desire such coverage.

Subsequently, the Pennsylvania Legislature amended the statute [40 P.S. 2000 (1971)] by deleting the option of rejecting uninsured motorist coverage. Although *Hionis v. Northern Mutual Insurance Co., supra,* is not named in *Sands,* the principle is applied.[3] In *Sands* it is noted that the agent never explained to the plaintiff that he was entitled to uninsured motorist coverage, much less what comprised that coverage. It is concluded that the plaintiff was entitled to coverage because, inter alia, the uninsured motorist coverage was never mentioned to him and his expressed desire to be "fully insured."

We question whether Pennsylvania has ever endorsed, tacitly or otherwise, a so-called reasonable expectations doctrine. It would appear that if the reasonable expectations doctrine does exist in Pennsylvania, it is but a branch of the *Hionis* tree which has undergone severe, if not life-taking, surgery. Further, if Pennsylvania has embraced the reasonable expectations doctrine, we question its state of health in view of *Standard Venetian Blind Co. v. American Empire Co., supra.*

The court in *Standard Venetian Blind, supra,* stated that *Hionis, supra,* held, " 'Where a policy is written in *unambiguous terms,* the burden of establishing the applicability of the exclusion or limitation involved proof that the insured was aware of the exclusion or limitation, and that the effect thereof, was explained to him.' " (Emphasis added.) Therefore, for the *Hionis* doctrine to be applicable, there must be a policy written in unambiguous terms.

The reasonable expectations doctrine has been discussed, but not applied in several federal cases decided in Pennsyl-

---

3. *Sands v. Granite Mutual Insurance Co., supra,* was decided December 22, 1974. *Hionis v. Northern Mutual Insurance Co., supra,* was decided September 23, 1974.

vania under Pennsylvania law. In *Kravitz v. Equitable Life Assurance Society of the U.S.*, 453 F.Supp. 381 (E.D. Pa.1978) it was held that where there is an ambiguity through a lack of clarity, the Court is obligated to look beyond the language in interpreting the contract. If there is a defense based on an exception or an exclusion of the policy, the defense is an affirmative one and the burden is upon the defendant to establish it, citing *Weissman v. Prashkar*, 405 Pa. 226, 175 A.2d 63 (1961). As to when the reasonable expectations doctrine might be applied, the Court in *Kravitz*, went on to state, "Pennsylvania courts will rely on public policy and overriding explicit terms in the insurance contract, at least when the contract terms would operate to defeat the reasonable expectations of the insured." *Id.* at 383, citing *Sands v. Granite Mutual Insurance Co., supra.* In *Kravitz*, however, coverage was denied.

Similarly, coverage was denied in *Taylor v. Phoenix Mutual Life Insurance Co.*, 453 F.Supp. 372 (E.D.Pa.1978). The court held that where the language of a policy is clear and unambiguous, it cannot be construed to be other than that what it says, and it must be given a plain and ordinary meaning.

The plaintiff has not endeavored to supply proof to establish that it would be against public policy to enforce exclusions (n), (o) and (p) in this case, nor do we believe them to be unenforceable. The policy of insurance involved is a standard policy and exclusions (n), (o) and (p) are standard exclusions. The only remaining issue is whether the exclusions (n), (o) and (p) are applicable in this case.

II. ARE EXCLUSIONS (n), (o) and (p) APPLICABLE TO THE NEGLIGENCE ACTIONS BROUGHT BY THE D'AUGOSTINES AT No. 211 of 1981 and CALAIARO, TRUSTEE AT No. 1007 of 1982 IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY?

The exclusions (n), (o) and (p) were previously held not to be applicable by this Court because they were not explained

as required by *Hionis*. The rejection of *Hionis* by the Supreme Court wipes the slate clean for a fresh consideration of these three exclusionary clauses.

The policy of insurance is known as a general liability policy. It is the standard form. It is intended to grant comprehensive general liability insurance coverage. It obligates the insurance company to pay up to the face amount of the policy and to defend lawsuits filed against the insured if the facts giving rise to the cause of action asserted against the insured constitute an "occurrence" [4] and if they are not within one of the exclusions, inter alia, (n), (o) and (p).

A court will not rewrite an insurance policy or construe clear and unambiguous language to mean other than what it says. *Blocker v. Etna [Aetna] Casualty & Surety Co.*, 232 Pa.Super. 111, 332 A.2d 476 (1975); *Pfeiffer v. Grocers Mutual Insurance Co.*, 251 Pa.Super. 1, 379 A.2d 118 (1977).

An insurance policy should be construed according to plain meaning of words used so as to avoid ambiguity while at the same time giving effect to all of its provisions. *Blocker v. Etna [Aetna] Casualty & Surety Co., supra; David v. Nat. Union Fire Insurance Co.*, 206 Pa.Super. 78, 211 A.2d 66 (1965). The language of an insurance policy should not be tortured to create ambiguities, but should be read to avoid ambiguities if possible. *Monti v. Rockwood Insurance Co.*, 303 Pa.Super. 473, 450 A.2d 24 (1982). Where the construction of an insurance policy is involved, the long-standing policy of the law is that the insurance

---

**4.** An occurrence means "... an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage, neither expected nor intended from the standpoint of the insured." This Court's first Opinion discusses the nature of the claim against the insured noting that although there are allegations of an intentional act, there are also allegations of a negligent act. Occurrence is defined and dealt with in *Barber v. Harleysville Mutual Insurance Co.*, 304 Pa.Super. 355, 450 A.2d 718 (1982); See also, *Lancaster Area Refuge Auth. v. Transamerica Insurance Co.*, 437 Pa. 493, 263 A.2d 368 (1970), accepting the language of the dissent as found in 214 Pa.Super. 80, 83, 251 A.2d 739, 741 (1969). The subject of an "occurrence" was discussed in the first Opinion on pp. 13–14.

policy is to be construed liberally in favor of the insured in close and/or doubtful cases. *Habecker v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 445 A.2d 1222 (1982); See also, *Raybestos-Manhattan, Inc. v. Industrial Risk Insurers*, 289 Pa.Super. 479, 433 A.2d 906 (1981).

The exclusions of the policy relied upon by the defendant are:

"(n) to property damage to the named inssured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of the material parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the named insured's products or work completed by or for the named insured, or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein."

In the trustee's complaint at No. 1007 of 1982, it is alleged:

Paragraph 11,

"That defects have become apparent in recent months in said construction of dwelling, and in the land caused by undermining for minerals and substances as a result of said undermining."

This same allegation appears in Paragraph 9 of the original and amended complaint of the D'Augostines.

Paragraph 13 of the trustee's complaint, being Paragraph 11 of the original and amended complaint of the D'Augostines, states:

"That sinkholes and subsidence were apparent on said land and said condition was known, or should have been

known to Merritt Estates, Inc., and Gene & Harvey Builders, Inc. . . . ''

Paragraph 18 of the trustee's complaint, which does not appear in the original or amended complaints of the D'Augostines, reads,

"That as a result of the above, the said land has become unfit for its intended purpose; that it is uninhabitable; and its value completely diminished; that the residence has been affected by subsidence; and the lawn is unsafe to occupy; and the proximity of the residence to subsidence renders said dwelling unfit for its intended purpose."

Paragraph 31 of the trustee's complaint reads,

"That Gene & Harvey Builders, Inc., Defendant second named, constructed said premises with knowledge of the defects in said land and with knowledge of said subsidence in said land, and misrepresented the true condition of said premises and concealed its true condition, all of which more specifically set forth in Paragraphs 11 and 13 of the Complaint."

Paragraphs 11 and 13 were previously quoted herein.

Negligence may be established in the suit of the trustee by showing that the insured failed to discover the subsidence and correct it prior to the erection, thereby making the house uninhabitable. It is not claimed that the insured did anything overt towards bringing about the damage, with the exception of filling in the hole which it is alleged, denied to the property owners the opportunity to know of this subsidence. It is claimed that the dwelling has become useless and uninhabitable because of its proximity to the subsidence.

Exclusions (n), (o) and (p) are not new and novel exclusions in insurance law. Exclusion (n) was dealt with in *Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of New York*, 281 F.2d 538 (3d Cir.1960). There, a manufacturer of venetian blinds claimed damages due to paint that had flecked from the blinds, leaving metal exposed. The

insurance company defended by asserting that by exclusion (n), there was no coverage for injury to or destruction of any goods or products manufactured, sold, or distributed by the named insured, out of which the accident arose. It was held that the lower court erred in refusing coverage. The court cited *Cadallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 589, 152 A.2d 484, 488 (1959), and quoted that "where a claim may potentially become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril." It held that once paint had been baked on, it became part of the finished product and, therefore, there was coverage.

Exclusion (*o*) is the subject of *Liberty Building Co. v. Royal Indemnity Co.*, — Cal.Distr.Ct.App. ——, 346 P.2d 444 (1959). There stucco had been improperly mixed and applied to buildings by the insured. It was held that, by an exclusion as to work completed, which applied to any goods or products manufactured, sold, handled or distributed out of which the accident occurred, coverage was properly denied. Similarly, a lower court was reversed in *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979), concerning a construction of exclusions (n) and (*o*). That court noted that there had been twenty years of judicial treatment of what is known as the "business risk" exclusion. Such an exclusive denies coverage for faulty workmanship on products where damages claimed were the cost of correcting the work itself. It was held that the exclusions were not ambiguous and, therefore, coverage was denied.

Exclusion (n) was used in *Vernon Williams & Sons Construction, Inc. v. Continental Insurance Co.*, 591 S.W.2d 760 (Tenn 1979) to deny coverage. That action was grounded upon faulty workmanship or materials, and it was for the cost of correcting itself.

*Saint Paul Fire & Marine Insurance Co. v. Coss*, 80 Cal.App.3d 890 [888], 145 Cal.Rptr. 836 (1978), also contained similar exclusions to our (n) and (*o*). That court

concluded that when the policy and all endorsements were properly read together, they could not have led the insured to believe that he had products liability coverage.

Exclusion (p) is construed in *Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.,* 260 N.W.2d 450, (Minn. 1977). There, coverage was permitted for the settling of an apartment building as a result of faulty construction due to negligent backfilling. This was held to be an occurrence and the exclusion was not applicable. The poor backfilling was done by one other then the insured, and it threatened not only to lower the value of the building, but to cause its destruction as well. Coverage was permitted. *Boggs v. Etna [Aetna] Casualty & Surety Co.,* 272 S.C. 460, 252 S.E.2d 565 (1979) involved an effort to recover damages against a contractor where basement walls leaked due to the position of the residence on the property. Plaintiff alleged the contractor was negligent in locating a house on a lot exposed to water seepage. This was held to be an "occurrence" within the scope of the contractor's liability policy. As such, the event need not be sudden to be an occurrence, but may be over a period of time.

Similarly, in the instant case, an occurrence is described as an event which is continuous or repeated, causing exposure to conditions. Liability was found in *Hauenstein v. St. Paul Mercury Indemnity Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954), where the insured was a distributor of plaster which was sold to a contractor who used it in the construction of a hospital. The plaster shrunk and cracked, necessitating its removal and considerable expense for repair. The court held that the insurance carrier was responsible for such damages.

It is the conclusion of this Court that the alleged negligent conduct in constructing a house on a lot with a subsidence of the lot is not within any of the named exclusions in (n), (o) or (p), and is an "occurrence" within the definition of the policy for which coverage is owing. We have no substantial doubt in this case. If we did have doubt, however, this would not change our conclusion.

In case of doubt, as to whether the allegations of a complaint against an insured state a cause of action within the coverage of a liability policy sufficient to compel the insured to defend the action, that doubt will be resolved in the insured's favor, 44 Am Jur.2d, *Insurance*, § 1141, p. 355 (1982).

WHEREFORE, we reaffirm the Orders previously entered in this case.