## Kvaerner U.S. Inc. v. One Beacon Insurance Company

C.P. of Philadelphia County, April Term 2003, no. 0940.

*Timothy C. Russell* for plaintiffs.
*Ralph J. Luongo,* for defendant One Beacon Ins. Co.

*Lawrence A. Serlin,* for defendant Century Indemnity Co.

SHEPPARD JR., *J.,* August 19, 2005—Plaintiffs, Kvaerner U.S. Inc. and Kvaerner Holdings Inc., brought suit against their commercial liability insurers, defendants, One Beacon Insurance Company and Century Indemnity Company, seeking defense and indemnity coverage for a large volume of asbestos bodily injury claims filed against Kvaerner in various jurisdictions. Presently before the court are: (1) plaintiffs' motion for partial summary judgment regarding the duty to defend, (2) defendant One Beacon's motion for partial summary judgment on the issue of control and scope of defense and (3) defendant Century's motion for partial summary judgment on the issue of control and coverage under a Century policy issued to D.M. International Inc.

## BACKGROUND

In early 2001, Kvaerner began to be subjected to a substantial number of liability claims by persons alleging asbestos-related bodily injury resulting from claimed exposure to asbestos while working at sites where Kvaerner's predecessors allegedly performed construction or other activities. As of March 1, 2005 approximately 5,993 claims had been filed in nine states, including Pennsylvania, and approximately 3,429 claims remain active and open. New asbestos claims continue to be filed against Kvaerner at a rate of approximately 100 per month.

One Beacon's predecessor, General Accident Fire & Life Assurance Corporation Ltd. issued Comprehensive

General Liability (CGL) insurance policies to Kvaerner predecessors for the 18-year period from 1964 to 1982. There are six polices in all.

Century's predecessor, the Insurance Company of North America, issued three general liability policies to Davy Inc. and one general liability policy to an entity known as D.M. International Inc., providing coverage for the four-year period from April 1, 1982 through April 1, 1986.

Upon receipt of the bodily injury claims, Kvaerner requested that defendants provide a defense. As of this date, although defendants have paid Kvaerner's past defense costs incurred with respect to some claims through a certain date in 2004, defendants have not assumed the duty to defend. Presently, Kvaerner is being represented by house counsel and various law firms across the country.

Kvaerner now moves for partial summary judgment in the form of a declaration that, at least with respect to certain categories of asbestos claims, defendant insurers are obligated under their polices to defend it against the claims and/or to pay the defense costs. Defendants do not oppose the essential requests in Kvaerner's motion; however, defendants submit that additional issues should be determined by the court, specifically the scope and control of the defense. The parties submitted proposed form orders with their respective motions. At oral argument, the parties agreed to certain language which has been incorporated within the order to be issued contemporaneously with this opinion, obviating the need for discussion here. This opinion will discuss the remaining

issues: (1) scope of defense, (2) control over the litigation and (3) coverage under the Century policy.[1]

## DISCUSSION

### A. *Standard of Review*

Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Davis v. Resources for Human Development Inc.,* 770 A.2d 353 (Pa. Super. 2001). If there are no material issues of fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. *Dudley v. USX Corp.,* 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer,* 783 A.2d 815 (Pa. Super. 2001).

The trial court must confine its inquiry when confronted with a motion for summary judgment to the question whether a material factual dispute exists. *Township of Bensalem v. Moore,* 152 Pa. Commw. 540, 620 A.2d 76 (1993). For summary judgment purposes, a material fact is one that directly affects the outcome of the case. *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662 (Pa. Super. 2000). "Thus, the overall purpose of a motion for summary judgment is to dispose of those cases in which

---

1. The parties agree that, for purposes of deciding this motion, a choice of law analysis is unnecessary since there appears to be a material agreement between Pennsylvania and Ohio authorities.

there exists no factual issue to be decided at trial." *Harris by Harris v. Hanberry,* 149 Pa. Commw. 300, 302, 613 A.2d 101, 102 (1992).

## B. *The Scope of Defense*[2]

Interpretation of an insurance contract is a matter of law and is the province of the court, not the jury. *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). "In interpreting the language of a policy, the goal is 'to ascertain the intent of the parties as manifested by the language of the written instrument.'" *The Municipality of Mt. Lebanon v. Reliance Insurance Co.,* 778 A.2d 1228, 1231-32 (Pa. Super. 2001) (quoting *Madison Construction, supra* at 606, 735 A.2d at 106). "Indeed, our Supreme Court has instructed that the 'polestar of our inquiry . . . is the language of the insurance policy.'" 788 A.2d at 1232 (quoting *Madison Construction, supra* at 606, 735 A.2d at 106).

"Where . . . the language of the [insurance] contract is clear and unambiguous, a court is required to give effect to that language." *Madison Construction, supra* at 606, 735 A.2d at 106 (quoting *Gene & Harvey Builders Inc. v. Pennsylvania Manufacturers Association Inc. Co.,* 512 Pa. 420, 426, 517 A.2d 910, 913 (1986)). (other citations omitted) When construing a policy, "[w]ords of common usage . . . are to be construed in their natural, plain and ordinary sense . . . and we may inform our understanding of these terms by considering their dictionary definitions." *Id.* at 608, 735 A.2d at 108. (citations omitted)

---

2. Defendant Century takes no position on this issue.

While a court must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity[,]" it must find that "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.* at 606, 735 A.2d at 106. "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.* (quoting *Gene & Harvey Builders, supra* at 426, 517 A.2d at 913). (other citations omitted)

Finally, "[i]n determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts, in interpreting a contract, do not assume that its language was chosen carelessly." *Steuart v. McChesney,* 498 Pa. 45, 51, 444 A.2d 659, 662 (1982) (quoting *Moore v. Stevens Coal Co.,* 315 Pa. 564, 568, 173 A. 661, 662 (1934)). Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

Here, a dispute centers upon the interpretation of the term "occurrence" found in five of the insurance polices issued by One Beacon covering the period from January 1, 1967 to April 1, 1992,[3] and the four insurance policies

3. In the One Beacon policy no. **-***** covering the period from February 14, 1964 to February 15, 1967, the term "occurrence" is defined differently. In this policy, "occurrence" is defined as "an event, or continuous or repeated exposure to conditions which unexpectedly causes injury during the policy period. All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence." One Beacon agrees that the second sentence of this endorsement's definition, found only in the first of the six One Beacon policies, supports plaintiffs' one occurrence per site argument.

issued by Century covering the period from April 1, 1982 to April 1, 1986. Kvaerner argues that all the asbestos-related personal injury claims embodied in the underlying suits should be identified and corelated by construction sites and that each construction site should constitute an occurrence. One Beacon on the other hand argues that all the asbestos-related personal injury claims alleged by claimants were caused by a single occurrence, the continuous or repeated exposure to the asbestos and, thus, the underlying injuries result from one occurrence.

The policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Defendants' appendix III exhibit "F" definition. In addition to the above policy definition, the "Limits of liability" provisions are also instructive. They provide in pertinent part:

"For the purpose of determining the company's liability, all *Bodily Injury* and *Property Damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *Occurrence.*" Defendants' appendix volume III exhibit F, amendments limits of liability (single limit).

The general rule is that an occurrence is determined by the cause or causes of the resulting injury. See *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.,* 676 F.2d 56 (3d Cir. 1982). Using this analysis, the inquiry is whether "there is but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *Id.* Consideration of the policy

language and application of the general rule to the facts of this case lead this court to conclude that the construction of furnaces at each construction site constituted a separate occurrence, in that at each construction site there was a new exposure and another occurrence. See *Stonewall Insurance Co. v. Asbestos Claims Mgmt Co.,* 73 F.3d 1178 (2nd Cir. 1995) (Installation of asbestos at each building was a separate occurrence because each installation created exposure to a condition which resulted in property damage neither expected nor intended.); see also, *Fina Inc. v. The Travelers Indem. Co.,* 184 F. Supp.2d 547 (N.D. 2002) (underlying asbestos claims constitute multiple occurrences).

Kvaerner's activities which triggered the underlying claims did not arise from a single, negligent practice that could be considered one cause, such as distributing a uniformly defective product from a single manufacturer or selling a product containing asbestos from one location. Instead, the exposure to asbestos arose from the construction of furnaces at different sites, at different times and for varying lengths of time. Consequently, the claimants that were exposed to asbestos at the same location and at the same time were exposed to "substantially the same general condition." Accordingly, the claims for each site should be considered one occurrence.

In urging justification for its position that the exposure to asbestos constitutes a single occurrence, One Beacon relies upon the omission of a sentence set forth in the first policy from subsequently issued insurance policies. That omitted sentence reads: "All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be

deemed one occurrence." The court, however, finds that this omission does not demonstrate that the drafters of the insurance policy intended the result urged by One Beacon. Instead, the court accepts Kvaerner's explanation that the definition of occurrence contained within the five subsequently issued policies is consistent with the industry standard and that no change was intended by the insurer in defining the number of occurrences. See Appleman on Insurance Law and Practice (2nd ed.) §117.1.

Moreover, although the sentence was omitted from one section of the later policies due to a change in the industry standard, new language was added to the limits of liability sections which incorporate the substance of the pertinent sentence. The new paragraph under the section entitled limits of liability states:

"For the purpose of determining the limit of the company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." See defendant One Beacon's appendix exhibit B.

This provision supports the conclusion that the asbestos exposure arising at each construction site constituted an occurrence. Accordingly, defendants' motion for summary judgment as it pertains to the scope of defense is *denied.*

## C. *Defendants Should Be Permitted To Control the Defense of Future Claims*

Defendants also move for summary judgment on the issue relative to the right to control the defense of the claims. Defendants maintain that they have a right to

control the defense consistent with the terms, conditions, exclusions and endorsements of the triggered policies. Conversely, Kvaerner argues that defendants have waived their right to control the defense of pending claims and that the existence of a conflict of interest will vitiate any right the insurers might otherwise have to control the defense of future claims.

This court will grant defendants' motion as it pertains to future claims, but deny defendants' motion as it pertains to the pending claims.[4]

The insurance policies issued by defendants provide that they have a duty and a right to defend the claims made against Kvaerner. Specifically, the policies provide:

"*Defense, settlement, supplementary payments*

"With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." One Beacon policy no. **-*****, insuring agreement II.

Additionally, the policy contains a provision entitled "Assistance and cooperation of the insured" condition (no. 10) which states:

"The insured shall cooperate with the company and, upon the company's request, attend hearings and trials,

---

4. With regard to past claims, defendants concede, and the court agrees, that the issue pertaining to the right to control is moot since these claims have been resolved.

assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

As to pending claims, Kvaerner argues that, by failing to step forward and honor their defense obligation from the outset, defendants have waived and forfeited any right to control the defense of the pending claims. This court believes that Kvaerner should continue to maintain the right to control the defense of the pending claims subject to defendants' supervision in order to maintain the consistency of the defense. If Kvaerner were to relinquish control of the defense of the pending claims, the effects of the hard work expended by its defense teams thus far in defending present claims would likely be so attenuated so as to be deemed a real loss. Hence, in the interests of consistency the right to control the pending claims should remain with Kvaerner.

As to future claims, Kvaerner argues that conflict of interests will vitiate any right the insurers might otherwise have had to control the defense of these claims. The court, however, does not find that there now exists a conflict of interest.

"When a liability insurer retains counsel to defend an insured, the insured is considered the client. If a conflict of interest arises between an insurer and its insured, the attorney representing the insured must act exclusively on behalf of, and in the best interests of, the insured."

*Rector, Wardens and Vestryman of St. Peter's Church v. Am. Nat'l Fire Ins. Co.,* 2002 U.S. Dist. Lexis 625 (E.D. Pa. 2002) (citing *Builders Square v. Saraco,* 1996 U.S. Dist. Lexis 19444 (E.D. Pa. Dec. 27, 1996)); see also, *Point Pleasant Canoe Rental Inc. v. Tinicum Township,* 110 F.R.D. 166, 170 (E.D. Pa. 1986).

A conflict of interest arises between an insured and insurer when the company's pursuit of its own best interests in the litigation is incompatible with the best interests of the insured. *Rector, Wardens and Vestryman of St. Peter's Church v. Am. Nat'l Fire Ins. Co.,* 2002 U.S. Dist. Lexis 625 (E.D. Pa. 2002) (quoting *St. Paul Fire & Marine Ins. Co. v. Roach Bros. Co.,* 639 F. Supp. 134, 138-39 (E.D. Pa. 1986)). Courts have concluded that one appropriate resolution in this circumstance is for the insurer to obtain separate, independent counsel for its insured, or to pay the costs incurred by an insured in hiring counsel. *Id.*

In support of its contention that it should be entitled to maintain control of the defense of future claims made against it, Kvaerner stresses the defendants' past conduct, such as their attempts to avoid or limit their coverage obligations, their assertion of a single occurrence theory and requiring that the complaints in the underlying claims spell out on their face the particular Kvaerner predecessor whose activities give rise to the claim. Kvaerner also argues that, if afforded the opportunity to control the defense, defendants would settle claims at a rate and in amounts that hasten the termination of their defense duties but at the same time raise Kvaerner's profile and make it a more inviting target for claimants.

Kvaerner's reasons for maintaining control are based on a theoretical possibility that a conflict will arise. Kvaerner has not directed the court to any fact of record that would establish an actual conflict and suggest that the attorneys retained by defendants will subordinate their ethical obligation to Kvaerner to some sense of duty owing to the insurance carrier.[5] To some extent, Kvaerner seeks to promote a per se rule that counsel provided to an insured by an insurance company is likely to disregard his ethical duty to his client. This court is unwilling to adopt such a rule based solely on Kvaerner's expectation that a conflict will arise. By so ruling, the court is not suggesting that conflicts do not arise. The court recognizes that situations exist which may warrant retaining independent counsel due to a conflict of interest between an insured and an insurer. The court, however, does not find that such a situation exists at this time. If, at a later time, an actual conflict arises between the insurer and the insured, Kvaerner, may, if it so chooses, move for the appointment of independent counsel. Accordingly, defendants' motion on the issue of control is granted in part. Defendants may assume control of claims filed after the date of this opinion.

### D. *Coverage Under the Policy Issued to D.M. International*

Century maintains that an error occurred in drafting the "named insured" endorsement to policy no. ************ issued to D.M. International Inc. Century argues that the parties did not intend to provide cov-

---

5. After considering its options, defendants may opt to retain current counsel for Kvaerner.

erage to Davy Inc. or its subsidiaries under this policy but, rather, intended to provide coverage to D.M. International and its subsidiaries, and that a scrivener's error occurred. Kvaerner argues that Century has furnished no facts to demonstrate its claim of mutual mistake.

In order to justify reformation of a contract on the basis of "mutual mistake," evidence of the mistake must be "clear and convincing." *Jones v. Prudential Property and Casualty Insurance Co.,* 856 A.2d 838, 844 (Pa. Super. 2004). A mutual mistake exists only where "both parties to a contract [are] mistaken as to existing facts at the time of execution." *Smith v. Thomas Jefferson University Hospital,* 424 Pa. Super. 41, 45, 621 A.2d 1030, 1032 (1993).

Here, Century fails to point to sufficient evidence to establish a mutual mistake, namely Kvaerner's awareness of the mistake in the named insured endorsement. Instead, Century relies upon internal inconsistencies within the endorsement, an alleged course of conduct established by the policies issued by Century's predecessor and an alleged redundancy in coverage if Kvaerner's position were adopted. Since no discovery has occurred to date, the finds that Century's partial motion for summary judgment on this issue is premature. Accordingly, Century's motion is denied without prejudice.

## CONCLUSION

For the reasons discussed, the parties' respective motions for partial summary judgment are granted, in part, as follows:

(1) The court finds that defendants, One Beacon Insurance Company and Century Indemnity Company, are

obligated under their respective insurance policies to defend plaintiff Kvaerner U.S. Inc. (KUSI), or to pay 100 percent of the reasonable and necessary defense costs incurred by KUSI after September 6, 2001, or any other date which may be agreed to by the respective parties after the entry of this order, with respect to any asbestos personal injury claim asserted against KUSI and covered under the subject insurance policies, if the complaint in the personal injury case can be read to permit proof, potentially, (a) that the asbestos claimant suffered an asbestos-related injury by reason of exposure to asbestos fibers, and that KUSI and one or more of its covered predecessors are liable therefore, and (b) that any part of the period from the claimant's first exposure to asbestos, to and including the date of manifestation of the claimant's asbestos-related injury, occurred during the effective period of one or more of One Beacon's or Century's policies.

(2) The court finds further that, in the event that an asbestos claimant's complaint can be read to permit proof as described in paragraph 1 above, KUSI may select any policy or policies under which a defendant is obligated as provided in paragraph 1 above, and may require that the defense, or the reimbursement of defense costs, be provided pursuant to such policy or policies. KUSI shall not be obligated to pay any portion of any defense costs with respect to any asbestos claim where part of the period from the claimant's alleged initial exposure to asbestos and including alleged manifestation of asbestos-related injury occurred or may have occurred during the effective period of one or more of One Beacon's or Century's insurance policies.

(3) The court further finds that:

(a) Insofar as a defendant's defense duty is triggered under any policy or policies, defendants may assume control of all *future* claims filed after the date of this opinion and consistent with the terms, conditions, exclusions and endorsements of the triggered policy or policies, and may undertake investigation, negotiation and settlement of any claim or suit as it deems expedient. This finding is made with the understanding that all defendants establish a framework that is consistent with the framework used to handle the past and present asbestos claims. (Pending claims shall continue to be handled by plaintiffs in the manner presently extant.)

(b) In accordance with the provisions within the policy, plaintiffs are under a duty, with respect to all underlying claims defended by defendants, of assistance and cooperation with defendants in the defense of the claims;

(c) Defendants' duty to defend under any particular policy at issue ends once payments equal to the policy's occurrence limit have been made in reimbursement of asbestos settlements and/or in satisfaction of asbestos verdicts;

(4) All underlying bodily injury claims arising out of *each* separate construction site or premise shall be deemed to be a separate, *single* occurrence.

(5) Century Insurance Company's partial motion for summary judgment is denied without prejudice.

The court will enter a contemporaneous order consistent with this opinion.

## ORDER

And now, August 19, 2005, upon consideration of plaintiffs' motion for partial summary judgment regarding the duty to defend, defendants' cross motions for partial summary judgment, the respective responses in opposition, the respective memoranda, all matters of record, after oral argument and in accord with the contemporaneous opinion being filed of record, it is ordered as follows:

(1) The court finds that defendants, One Beacon Insurance Company and Century Indemnity Company, are obligated under their respective insurance policies to defend plaintiff Kvaerner U.S. Inc. (KUSI), or to pay 100 percent of the reasonable and necessary defense costs incurred by KUSI after September 6, 2001, or any other date which may be agreed to by the respective parties after the entry of this order, with respect to any asbestos personal injury claim asserted against KUSI and covered under the subject insurance policies, if the complaint in the personal injury case can be read to permit proof, potentially, (a) that the asbestos claimant suffered an asbestos-related injury by reason of exposure to asbestos fibers and that KUSI and one or more of its covered predecessors are liable therefore, and (b) any part of the period from the claimant's first exposure to asbestos, to and including the date of manifestation of the claimant's asbestos-related injury, occurred during the effective period of one or more of One Beacon's or Century's policies.

(2) The court finds further that, in the event that an asbestos claimant's complaint can be read to permit proof as described in paragraph 1 above, KUSI may select any

policy or policies under which a defendant is obligated as provided in paragraph 1 above, and may require that the defense, or the reimbursement of defense costs, be provided pursuant to such policy or policies. KUSI shall not be obligated to pay any portion of any defense costs with respect to any asbestos claim where part of the period from the claimant's alleged initial exposure to asbestos and including alleged manifestation of asbestos-related injury occurred or may have occurred during the effective period of one or more of One Beacon's or Century's insurance policies.

(3) The court further finds that:

(a) Insofar as a defendant's defense duty is triggered under any policy or policies, defendants may assume control of all *future* claims filed after the date of this opinion and consistent with the terms, conditions, exclusions and endorsements of the triggered policy or policies, and may undertake investigation, negotiation and settlement of any claim or suit as it deems expedient. This finding is made with the understanding that all defendants establish a framework that is consistent with the framework used to handle the past and present asbestos claims. (Pending claims shall continue to be handled by plaintiffs in the manner presently extant.)

(b) In accordance with the provisions within the policy, plaintiffs are under a duty, with respect to all underlying claims defended by defendants, of assistance and cooperation with defendants in the defense of the claims;

(c) Defendants' duty to defend under any particular policy at issue ends once payments equal to the policy's occurrence limit have been made in reimbursement of asbestos settlements and/or in satisfaction of asbestos verdicts;

(4) All underlying bodily injury claims arising out of *each* separate construction site or premise shall be deemed to be a separate, *single* occurrence.

(5) Century Insurance Company's partial motion for summary judgment is denied without prejudice.