**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3287
_____

WENDY KEAHY,
                              Appellant

v.

FEDERATED LIFE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:20-cv-06419)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
November 15, 2022
_____

Before: HARDIMAN, RESTREPO, and PORTER,
*Circuit Judges*.

(Filed: December 6, 2022)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not
binding precedent.

PORTER, *Circuit Judge*.

Wendy Keahey sued Federated Life Insurance Company for breach of contract. She claimed that Federated failed to pay her disability benefits as required by her insurance policy. But, as the District Court found, Keahey's claim was time-barred by the unambiguous terms of the policy. We will affirm.

I

A

Appellant Wendy Keahey[1] purchased an insurance policy (the "Policy") from Appellee Federated Life Insurance on July 23, 2008. She was eventually diagnosed with breast cancer and received corresponding benefits under the Policy until August 2015, when Federated determined that she had recovered. Keahey continued to receive coverage for depression until Federated informed her that it would stop paying mental-health benefits on September 15, 2016, due to the Policy's two-year coverage maximum for mental-health disabilities. Federated later extended those benefits to April 1, 2017.

In two letters communicating the benefit termination, Federated explained that "[w]e offer two levels of internal review; once this process is exhausted you have the right to take legal action." App. 69, 71. Keahey initiated the first level of internal review on February 2, 2017. Federated confirmed its termination decision on March 23, 2017. In a letter to Keahey, it explained: "You have now exhausted your first-level appeal. If you

---

[1] The case caption misspells Keahey's last name. We use the spelling found in the briefs and in the insurance policy.

disagree with this decision, you have the right to a second-level appeal by sending a written request." App. 74.

Keahey never filed a second-level appeal. Instead, she sued Federated in the District Court on December 22, 2020.

## B

In her complaint, Keahey alleged that Federated breached the terms of the Policy by failing to pay her disability benefits after September 15, 2016. Compl. ¶¶ 9, 24–31. In later filings, Keahey adjusted her timeline and claimed that she was entitled to benefits after April 1, 2017, the day Federated stopped her mental-health coverage. This discrepancy is not material to Keahey's appeal. The Policy bars her claim whether her benefits ceased on September 15, 2016, as she pleaded; March 23, 2017, as the District Court assumed; or April 1, 2017, as the record reflects.

Federated responded to Keahey's suit with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that her claim was untimely under the Policy. The District Court agreed and granted the motion. It determined that the terms of the Policy required Keahey to file within three years of the date when proof of loss was due, which in Keahey's case was 90 days after the claimed benefit was not paid. The Court then assumed that Keahey's benefits ceased on March 23, 2017, the date Federated denied her first-level appeal, meaning that she needed to submit proof of disability by June 21, 2017. Because Keahey did not sue Federated until December 22, 2020—three-and-a-half years after proof was due—the Court found that her claim was barred by the Policy and dismissed her complaint.

Keahey filed a motion for reconsideration. Reviving an argument she had made before dismissal, she claimed that the Policy required proof of loss within one year of the claimed benefit, not 90 days, giving her until April 1, 2021, to file in the District Court. Keahey also argued, for the first time, that the Policy was susceptible to two reasonable interpretations, rendering it legally ambiguous and mandating a construction in her favor. The District Court denied Keahey's motion and reiterated its holding that her claim was barred by the Policy's terms. The Court also held that the Policy was not ambiguous and that the claim was barred by Pennsylvania's four-year statute of limitations.

Keahey timely appealed.

## II

The District Court had diversity jurisdiction under 28 U.S.C. § 1332.[2] This Court has jurisdiction under 28 U.S.C. § 1291.

---

[2] Keahey alleged in her complaint that she seeks damages "in excess of $75,000," that she is a Pennsylvania resident, and that Federated is a "legal entity existing under the laws of the State of Minnesota" with a Minnesota address. Compl. ¶¶ 2, 3, 35. Keahey did not allege Federated's principal place of business, even though § 1332(c)(1) provides that "a corporation shall be deemed a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Pleadings that fail to allege a single principal place of business are defective, but they may be cured by record evidence. *J&R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1265 n.3 (3d Cir. 1994). Here, the face of the Policy indicates that Federated's "Home Office" is in Owatonna, Minnesota, so under *J&R Ice Cream* we can deem Keahey's pleading deficiency cured. App. 34; *see Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) ("[W]e conclude that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.").

To survive a motion to dismiss, a complaint must contain factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8(a)(2), 12(b)(6). We review a District Court's order granting a motion to dismiss de novo. *Chang v. Child.'s Advoc. Ctr. of Del. Weih Steve Chang*, 938 F.3d 384, 386 (3d Cir. 2019).

## III

The District Court held that Keahey's suit was untimely under the unambiguous terms of the Policy. That is correct.

Pennsylvania law governs the interpretation of the Policy. In Pennsylvania, courts interpret insurance policies like other contracts. *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435 (3d Cir. 2006); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Thus, we must "ascertain the intent of the parties as manifested by the language of the written instrument." *Madison*, 735 A.2d at 106. (quoting *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986)). "Where . . . the language of the [policy] is clear and unambiguous, a court is required to give effect to that language." *Madison*, 735 A.2d at 106. Ambiguous policy language is construed in favor of the insured. *Id.*

The Policy has a provision titled "Legal Actions." It states that "[n]o action may be brought later than 3 years . . . after proof is required." App. 42. And proof is generally required within 90 days of termination, according to the Policy's "Proofs of Loss" provision:

> You must send us proof of your disability and any other proof of reduced income that may be required within 90 days of each monthly benefit claimed. Failure to do so may result in suspension of benefits until it is provided.
>
> If it isn't possible to send proof within 90 days, send it as soon as reasonably possible. We will not reduce or deny the claim for this reason if you file as soon as reasonably possible. In any event, the proof required must be given no later than one year from the time specified unless you were not then competent to make the claim.

App. 40.

Keahey did not allege in her complaint that it was impossible for her to submit proof of her disability within 90 days of Federated ceasing her benefits. So her proof was due no later than June 27, 2017, 90 days after her benefits expired. The Legal Actions provision then gave her three years—until June 27, 2020—to file a lawsuit. Keahey missed this deadline by nearly six months when she filed on December 22, 2020.

Keahey contests this conclusion by isolating a single sentence of the Proofs of Loss provision: "*In any event*, the proof required must be given no later than one year from the time specified unless you were not then competent to make the claim." App. 40 (emphasis added); *see* Appellant Br. 13. Keahey says that because the one-year deadline for proof of loss applies "in any event," she actually had four years from the termination of her benefits to file her lawsuit, not three years plus 90 days.

Keahey's reading is at odds with the text of the Policy, and therefore unreasonable, for two reasons. First, it misunderstands the idiom "in any event," which is commonly defined as "whatever happens." *In Any Event*, Cambridge Academic Content

Dictionary 316 (1st ed. 2009).[3] Reading the text of the Policy with this definition, the Proofs of Loss provision simply states that, whatever happens, "the proof required must be given no later than one year from the time specified." App. 40. This sentence establishes a qualification to the other rules in the Proofs of Loss provision: proof is due "no later" than a year after the date of the challenged benefit but may be required earlier than that—within 90 days or "as soon as reasonably possible."[4]

Second, Keahey's reading only works by rendering a critical part of the Proofs of Loss provision meaningless: if possible, the claimant "must send [Federated] proof of . . . disability . . . within 90 days of each monthly benefit claimed." App. 40. Interpretations that skirt the text and create needless surplusage are roundly disfavored, including in Pennsylvania. *See Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 463–64 (Pa. 2015).[5] Keahey's reading is unreasonable because, on top of misunderstanding "in any

---

[3] *See also In any event*, Oxford English Dictionary Online (Nov. 8, 2022, 2:36 PM) ("whatever happens or may have happened"), https://perma.cc/3KR4-L82G; *and see In any event*, The American Heritage Dictionary of Idioms 319 (1st ed. 1997) ("No matter what happens, certainly; also, whatever the fact is, anyway.").

[4] Keahey cites a 1958 case for the proposition that the phrase "in any event" wipes out any contractual obligations unlucky enough to be placed near it. We are not persuaded. In *Pines Plaza Bowling, Inc. v. Rossview, Inc.*, the lease at issue stated, "In any event, failure on the part of the Lessor to complete the premises . . . shall not be grounds for cancellation . . . *provided that the premises are completed within one year thereafter*." 145 A.2d 672, 675 (Pa. 1958) (emphasis added). Instead of interpreting the "in any event" clause in isolation, as Keahey urges this Court to do, the *Pines Plaza* court read it alongside the proviso that the premises had to be finished within a year. *Id.*

[5] Realizing this, Keahey offers that the 90-day rule "still defines when an insured must submit a proof of claim in order to avoid having her benefits suspended or denied." Appellant's Reply 13. But this is exactly the point: the 90-day rule provides the deadline for proof, after which the three-year clock of the Legal Actions provision starts to run.

7

event," she asks us to ignore the rest of the Proofs of Loss provision. This is indefensible when, as discussed above, each word of the provision can be given meaning.

In sum, the Proofs of Loss provision required Keahey to submit proof of her disability within 90 days of the termination of her benefits, if possible. Otherwise, proof was due "as soon as reasonably possible," subject to the qualification that, "in any event," proof was due within a year. Because Keahey did not allege that it was impossible for her to submit proof within 90 days, her deadline was June 27, 2017, at the latest, 90 days after her benefits expired. She then had three years to file suit. Keahey's December 22, 2020 complaint was therefore untimely under the unambiguous terms of the Policy. For this reason, we need not consider whether the claim was also untimely under Pennsylvania's statute of limitations.

## IV

For the reasons stated above, we will affirm the District Court.

8