**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3237
_____

STEPHEN P. KOONS
                                          Appellant

v.

XL INSURANCE AMERICA, INC.;
GREENWICH INSURANCE CO.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-11-cv-02956)
District Judge: Honorable William H. Yohn, Jr.
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 19, 2013

Before: SMITH, GREENAWAY, JR., and VAN ANTWERPEN, *Circuit Judges*.

(Opinion Filed: March 25, 2013)
_____

OPINION OF THE COURT
_____

VAN ANTWERPEN, *Circuit Judge*.

Stephen P. Koons ("Koons") filed a complaint seeking declaratory judgment that

XL Insurance America, Inc. ("XL Insurance") and Greenwich Insurance Company

("Greenwich") had a duty to defend and indemnify him in a personal injury action filed against him. The parties filed cross-motions for summary judgment, and the District Court denied Koons' motion and granted XL Insurance's and Greenwich's motions. On appeal, Koons only challenges the District Court's decision to grant Greenwich's motion for summary judgment. For the reasons that follow, we will reverse and remand the matter.

## I.

This action arises out of a tragic incident occurring on April 18, 2008, in which Jeremy J. Andre, an employee of Ches-Mont Disposal, LLC, was killed while operating a garbage disposal truck.[1] Andre's Estate filed an action alleging, *inter alia*, that Koons had caused the death because he owned the truck which killed Andre and had failed to properly maintain it. Disposition of the instant matter hinges on the relationship between Koons, Ches-Mont Disposal, LLC (and its predecessors), and the truck which allegedly killed Andre.

### A. Factual Background

In 1999, Koons purchased Miller Concrete and ran it as a sole proprietorship. Miller Concrete's business was selling and installing underground tanks. While he owned and ran Miller Concrete, Koons was also the sole shareholder and President of No Fun Allowed, Inc. ("NFA") d/b/a Ches-Mont Disposal. Ches-Mont Disposal is a waste collection, recycling, and disposal company. Therefore, Koons owned the tank

---

[1] In the record, the company is alternatively referred to as "Chesmont Disposal," but for consistency's sake, we will use the hyphenated version of the name.

installment company as a sole proprietorship (Miller Concrete) and simultaneously was the President and sole shareholder of the waste collection and disposal corporation (NFA d/b/a Ches-Mont Disposal).

On October 22, 2001, Stephen Koons d/b/a Miller Concrete purchased Mack Truck Model No. MR688S, VIN 1M2K195C71M018188 ("the Truck") from McNeilus Truck and Manufacturing Company for $136,000. (Appendix ("App.") at 411). This is the Truck that allegedly caused the death of Jeremy Andre. McNeilus' invoice documenting the sale lists Ches-Mont Disposal as the Final User of the Truck. (*Id.* at 411). The Truck is a trash disposal truck, specially fitted with a twenty-five-yard high compaction rear loader.

The Truck was delivered on November 7, 2001. On November 12, 2001, Koons entered into a lease agreement with NFA, in which Koons agreed to lease the Truck to NFA for thirty-six months, at a rate of $2,657.41 per month. Koons asserts NFA never actually made lease payments to him, since he was the sole owner of NFA. The record contains no evidence, such as cancelled checks or other documents, that NFA made any payments. Although the lease expired in November 2004, as of October 6, 2009, the Pennsylvania Department of Transportation ("PENNDOT") listed Stephen Koons d/b/a Miller Concrete as the owner of the Truck, and NFA d/b/a Ches-Mont Disposal as the lessee. (App. at 438).

After the lease expired in November 2004, Ches-Mont Disposal continued to make exclusive, uninterrupted use of the Truck. Koons did not perform any maintenance on

3

the Truck; it was exclusively inspected, maintained, and repaired by employees of Ches-Mont Disposal.

In 2006, Koons acquired two partners, Richard Godshell and Patrick Kelly.[2] The three formed Ches-Mont Holdings, LLC ("the Holding Company"); Koons holds a 35% share of the Holding Company, with Godshell and Kelly owning the rest. At the same time, Ches-Mont Disposal, Inc. changed from an S-Corporation to a limited liability corporation, and became Ches-Mont Disposal, LLC. The Holding Company was the sole owner of Ches-Mont Disposal, LLC, and Koons was President of the disposal company. Therefore, at the end of the corporate restructuring, Ches-Mont Disposal was wholly owned by the Holding Company, and Koons owned 35% of the Holding Company and was President of Ches-Mont Disposal, LLC.[3] After this restructuring, Ches-Mont Disposal continued to make exclusive and uninterrupted use of the Truck, even though the lease had long expired, and Koons continued to not receive any compensation for his provision of the Truck.

## B. Procedural History

Andre's Estate sued Koons, along with other defendants not relevant to this case, as the owner of the Truck, alleging that he failed to properly inspect, maintain, and/or repair the Truck, which contributed to Andre's death. Andre's Estate did not sue either Ches-Mont Disposal, LLC or Ches-Mont Holdings, and does not allege Koons is liable

---

[2] In 2004 or 2005, NFA changed its name to Ches-Mont Disposal, Inc., but did not otherwise change its structure.

[3] This was the corporate structure in place at the time of Andre's death.

because of his relationship to either of those companies. Koons' alleged liability is premised solely on his ownership of the Truck.

Koons sought defense and indemnification from XL Insurance and Greenwich, which they refused to pay. He then filed the instant action seeking declaratory judgment that both companies had a duty to defend and indemnify him. After all the parties filed motions for summary judgment, the District Court granted the motions of XL Insurance and Greenwich against Koons. Koons appeals only from the District Court's decision that Koons is not an "Insured" under "Coverage B" of the Greenwich policy.

Under the Greenwich policy, Ches-Mont Disposal, LLC, is the Named Insured. Coverage extends to the "Insured," defined as:

> 1. The Named Insured
> …
> 3. your [the Named Insured's] partners, joint venture members, executive officers, employees, directors, stockholders or volunteers *while acting within the scope of their duties as such*.

(App. at 237) (emphasis added). The District Court found that Koons was not an "Insured" under the policy. The court concluded that, based on the record, no reasonable jury could find that Koons had purchased the Truck in his role as owner of the predecessor of Ches-Mont Disposal, LLC, and therefore he was not being sued for conduct committed "while acting within the scope of [his] duties." The District Court denied Koons' motion to alter or amend judgment, and Koons timely appealed.

**II.**

The District Court had jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment, applying the same standard as the District Court. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks omitted). We view the evidence "in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor." *Id.* at 373-74.

## A. Interpretation of the Contract

Koons argues that the District Court erred because it failed to consider the purpose of umbrella insurance policies, as well as the reasonable expectations of the parties, and that under such considerations, the contract should be broadly construed in his favor. This argument fails.

Under Pennsylvania law, which the parties agree governs here, "the interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court, a question over which we exercise plenary review." *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999). If "'the language of the [insurance] contract is clear and unambiguous, a court is required to give effect to that language.'" *Madison*

6

*Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (quoting *Gene & Harvey Builders, Inc. v. Pa. Mfrs. Ass'n Ins. Co.*, 517 A.2d 910, 913 (1986)). "'Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the dafter of the agreement.'" *Id.* "This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.*

The contract language is clear. "Insured" is defined as the "partners, joint venture members, executive officers, employees, directors, stockholders or volunteers" of the Named Insured, "while acting within the scope of their duties as such." (App. at 237). This unambiguously indicates that the relevant individuals are not covered for all of their conduct, but rather only the conduct they commit "while acting within the scope of their duties" as employees or owners of Ches-Mont Disposal. Since this language is unambiguous, it controls, and we need not address Koons' policy-based arguments, the reasonable expectations of the parties, or Greenwich's claim that Koons has waived this line of argument. *Madison Constr. Co.*, 735 A.2d at 106.

## B. Genuine Dispute as to a Material Fact[4]

___

[4] We do not address whether the contract language unambiguously indicates that Koons' conduct, as the sole shareholder and President of the *predecessor* to the Named Insured, would be covered by the contract. As explained above, assessing contract language for ambiguity is a fact-based analysis, dependent on the specific circumstances of the case. *Madison Constr. Co.*, 735 A.2d at 106. The District Court did not decide this issue, instead finding that there was insufficient evidence in the record to allow a jury to find that Koons had provided the Truck to Ches-Mont Disposal, LLC in his capacity as the owner of the predecessor of Ches-Mont Disposal. Since the District Court and the parties

7

The Andre Estate alleged Koons was liable because he owned the Truck and failed to properly maintain it. Greenwich argues that Koons' alleged liability is not related to his duties as part-owner and President of Ches-Mont Disposal, LLC or his ownership of its predecessor. Koons argued, and argues on appeal, that he acted within his role as an owner when he provided the Truck to Ches-Mont Disposal. The District Court found that there is "no evidence in the record from which a jury could reasonably find that [Koons] purchased and leased the truck in his capacity as the founder and sole owner of the predecessor of Ches-Mont LLC," and based its holding on that ground. The District Court erred.

In an insurance coverage dispute, "an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). For summary judgment to be denied, the record need not contain direct evidence to create a genuine issue as to a material fact; circumstantial evidence which would allow a jury to find for the nonmovant is sufficient.[5] *See, e.g.*, *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1165 (3d Cir. 1990) ("[N]othing in Rule 56 prevents [plaintiffs] from creating a genuine issue of material fact by pointing to sufficiently powerful countervailing circumstantial evidence.").

_____

did not address the issue, and since resolution of the issue is fact-dependent, it would be inappropriate for us to decide it here.

[5] This is particularly true when disposition of an issue turns on the individual's state of mind, and the record contains circumstantial evidence of that state of mind. *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998). Though this case does not directly turn on Koons' state of mind, it does implicate his purpose or motivation in purchasing the Truck.

Here, the issue is whether there is sufficient evidence in the record, viewing the record *and reasonable inferences* therefrom in the light most favorable to Koons, that Koons purchased the Truck in his capacity as the founder and sole owner of the predecessor of Ches-Mont LLC. We conclude that there is.

The Truck is specially designed for waste disposal purposes; it is a trash truck. The Truck was purchased by Koons d/b/a Miller Concrete, even though Miller Concrete sold and installed septic tanks. At the time of purchase, Koons was also the sole owner of Ches-Mont Disposal, a waste disposal company. The fact that Koons purchased a specially designed trash disposal truck, and at the time owned both a septic tank company and a trash disposal company, would allow a reasonable jury to infer that he purchased the trash disposal truck "in his capacity as the founder and sole owner" of the trash disposal company, rather than for the benefit of the tank installment company.

This conclusion is supported by other evidence in the record. Koons purchased the Truck for $136,000 on October 22, 2001, and it was delivered on November 7, 2001. Almost immediately after delivery, Koons began to "lease" the Truck to NFA, the predecessor to Ches-Mont Disposal, LLC. Though NFA d/b/a Ches-Mont Disposal was supposed to pay Koons $2657.41 per month, Koons testified that no payments were ever made to him, and there is no evidence of any payments in the record.[6] Additionally, the lease expired in November 2004, but NFA and its successors continued to make

---

[6] Koons testified that because "[he] was the company [Ches-Mont Disposal]," he was "giving the Truck to [himself]," without compensation. (App. at 408).

9

exclusive, uninterrupted use of the Truck after the end of the lease period; Koons never used the Truck for his personal benefit or for the benefit of Miller Concrete.

Furthermore, the Truck vendor's invoice, which documented the purchase of the Truck, identified Koons as the buyer of the Truck but listed Ches-Mont Disposal as its Final User. Although this document was created over two weeks before Koons leased the Truck to NFA, it already noted that Ches-Mont Disposal was the intended Final User of the vehicle.

In sum, the record establishes that Koons purchased a $136,000 trash disposal truck, almost immediately provided it to his trash disposal company, received no financial compensation for it, did not personally use it, and did not allow Miller Concrete to use it. The record shows that the trash company maintained and used the Truck exclusively and without interruption after receiving it from Koons, continued to do so after the lease period expired, and did not pay Koons anything for the use of the Truck, either during or after the lease period. This provides sufficient evidence to allow a reasonable jury to infer Koons purchased the Truck in his capacity as the owner of Ches-Mont LLC's predecessor. To conclude otherwise, we would have to hold that every reasonable jury would find that Koons had purchased the $136,000 trash disposal truck and provided it to the trash disposal company that he owned, without compensation, for reasons other than his ownership of the company. We are unwilling to do so.

### III.

For the foregoing reasons, the District Court's Order is reversed, and the matter is remanded for further proceedings consistent with this opinion.

10