**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MARY FENDER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N17C-03-198 EMD |
| | ) | |
| METROPOLITAN REVENUE | ) | |
| ASSOCIATES, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Upon consideration of the Defendant's Motion for Summary Judgment (the "Motion")

filed by Defendant Metropolitan Revenue Associates, LLC ("MRA"); the affidavit of Geoffrey

Langdon and exhibits attached to the Motion; the Answering Memorandum of Plaintiff Mary

Fender in Opposition to Defendant's Motion for Summary Judgment (the "Answer") filed by

Plaintiff Mary Fender; the affidavit of Mary Fender and exhibits attached to the Answer; the

arguments made in support of the Motion and the Answer at the hearing (the "Hearing") held on

February 12, 2018; and the entire record of this civil action,

**IT IS HEREBY ORDERED** that the Motion is **GRANTED in part and DENIED in**

**part as follows:**

**I. RELEVANT FACTS**

On May 15, 2013, Ms. Fender and MRA signed a referral agreement ("May Referral

Agreement"). The May Referral Agreement became effective on May 1, 2013. Through the

May Referral Agreement, Ms. Fender was "to provide limited referral leads and auditing services

to MRA in connection to MRA's contract with the DOR in providing services to improve tax

filing and collection compliance through the examination and identification on unreported and/or

under reported tax, interest and penalties for taxpayers that are subject to DOR's income tax code."[1]

Ms. Fender's compensation through the May Referral Agreement was "fifty percent (50%) of all compensation received by MRA from approved leads referred to by [Fender] during the term of this Agreement."[2] Additionally, MRA was to pay Ms. Fender "all compensation due within 30 days following MRA's receipt of payment from the DOR."[3]

The Parties signed a new referral agreement on November 13, 2013 ("November Referral Agreement").[4] The November Referral Agreement became effective on May 9, 2013. The November Referral Agreement was identical to the May Referral Agreement with a few exceptions regarding compensation.[5] First, Ms. Fender would receive 15% commission from non-filers from Fender's CCCH report not already identified as a lead or currently under audit by MRA. Second, MRA must pay Ms. Fender "all compensation due monthly upon presentation of an invoice following review and approval by MRA and receipt of payment from the DOR for all [of Fender's] sourced leads that generated compensation to MRA" and that payment must be within 30 days of MRA's receipt of the invoice. Third, Ms. Fender would receive $34 per hour for any additional work provided to MRA. Fourth, Ms. Fender could only submit one invoice each calendar month. The November Referral Agreement also included an exhibit listing specific leads for which Ms. Fender would receive her 50% commission.[6]

---

[1] Compl. ¶ 11.
[2] Id. ¶ 13.
[3] Id.
[4] Id. ¶ 16.
[5] Id. ¶ 17.
[6] Mot., Ex. B.

MRA provided Ms. Fender with lists of the status of different accounts mostly on a monthly basis. In this litigation, Ms. Fender uses a list of accounts she received on August 22, 2016 (the "2016 Report").

Ms. Fender filed her complaint (the "Complaint") on March 15, 2017. In the Complaint, Ms. Fender seeks: (1) declaratory judgment that MRA violated Fender's rights; (2) compensatory damages; (3) full and accurate accounting of all leads and files on which Fender performed services for MRA; (4) reasonable costs and attorney's fees; (5) punitive damages for MRA's egregious conduct; and (6) any other just and proper relief.

MRA hired Gregory Cowhey, a forensic accountant, to verify the payments made to Ms. Fender. On September 12, 2017, Mr. Cowhey completed an expert report (the "Cowhey Report").[7] The Cowhey Report indicates that the State of Delaware made 72 payments to MRA since May 15, 2013 totaling $10,593,660.00.[8] Mr. Cowhey adjusted the payments to $10,553,205.00 after removing a few items unrelated to Fender's referrals.[9]

Mr. Cowhey then created a report with all referrals relating to Ms. Fender.[10] All individuals or companies investigated by MRA are assigned an Unique ID.[11] Based on the unique IDs relating to Ms. Fender, Mr. Cowhey found that commissions paid to MRA by the State of Delaware totaled $27,276.69.[12] Multiplying that amount by the commission rate of 15% or 50% depending on the contractual percentage, Mr. Cowhey found that Ms. Fender was entitled to $8,713.18.[13]

---

[7] Mot., Ex. L.
[8] *Id.* at 3.
[9] *Id.*
[10] *Id.* at 4.
[11] *Id.*
[12] *Id.*
[13] *Id.*

To date, MRA paid Ms. Fender a total of $11,992.98.[14] Of that amount, $2,720 was hourly compensation.[15] Therefore, Ms. Fender received $9,272.98 in commission from MRA.[16] According to Mr. Cowhey's Report, MRA overpaid Ms. Fender by $559.80.[17]

On May 30, 2017, MRA produced: (i) cover e-mails and Audit Reports (253 pages as well as in searchable electronic format); (ii) MRA Invoices to State (74 pages); (iii) Fender's Invoices (19 pages); and (iv) Fender related e-mails (215 pages)."[18] On July 23, 2017, MRA also produced: "(v) MRA Invoices to State (98 pages); and (vii) QuickBooks Invoice Report with all ID's (39 pages)."[19] MRA also prepared a tutorial with step-by-step interfacing of the documents listed above.[20]

On September 29, 2017, the Court heard oral argument on Ms. Fender's first Motion to Compel. The parties conferred and submitted a proposed order. The Court adopted the order on November 2, 2017 (the "Order"). Under the Order, MRA submitted the names, SS/EINs and Unique ID for cases that MRA audited to the full extent.[21] MRA would also provide Ms. Fender the names and unique IDs for cases which MRA commenced but did not pursue far enough to get a taxpayer ID.[22]

Following the Order, MRA provided Ms. Fender's counsel, for attorney's eyes only, a list of all audit candidates supplied to defendant, whether or not provided by Ms. Fender.[23] Following a hearing on a second motion to compel, the Court ordered MRA or Ms. Fender's

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 6.
[18] Mot. ¶ 6.
[19] *Id.*
[20] *Id.*
[21] D.I. 21.
[22] *Id.*
[23] Ans., Ex. 2.

4

counsel to provide an exhibit from the hearing to Ms. Fender once Ms. Fender signed a confidentiality agreement acceptable to MRA's counsel. The exhibit from the hearing, All MRA Audits—All Contracts, provided a detailed chart listing out the accounts and amounts paid (the "Disclosure Report").[24]

On November 6, 2017, MRA produced Invoices for State Contracts for eyes only of Ms. Fender's counsel.[25] The Invoices for State Contracts lists all taxpayers for who MRA sent an invoice to the State.[26] The Invoices for State Contracts contains the invoice number and date in alphabetical order.[27] MRA also produced All MRA Audits—All Contracts.[28] This document lists every taxpayer MRA has viewed or opened with the unique ID.[29] On December 27, 2017, the Court ordered MRA to produce the All MRA Audits—All Contracts document to Ms. Fender subject to a confidentiality agreement.[30]

The Court learned at the Hearing that Ms. Fender never signed a confidentiality agreement. According to Ms. Fender's counsel, Ms. Fender never signed a confidentiality agreement for personal reasons even though representations were made that her involvement was critical to the prosecution of her claims against MRA.

On November 20, 2017, MRA filed the Motion. On January 8, 2018, Ms. Fender filed the Answer. The Court took the matter under advisement after the Hearing.

Discovery is complete. Trial in this case is set to begin on March 12, 2018.

---

[24] D.I. 24, Ex. F.
[25] Mot. ¶ 10.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] D.I. 25.

## II.  PARTIES CONTENTIONS

### a.  MRA'S CONTENTIONS

MRA contends that Ms. Fender failed to identify any lead for which MRA received compensation from the State and MRA failed to compensate Ms. Fender.  MRA produced a substantial amount of discovery in this case.  As such, Ms. Fender cannot show a breach of contract and MRA is entitled to summary judgment.

### b.  MS. FENDER'S CONTENTIONS

Ms. Fender argues that there are disputes as to material facts and that summary judgment is not appropriate.  Ms. Fender states that she has not received any payment from MRA since February 1, 2016.  However, MRA produced documents that show payments from the State to MRA since that time.  Ms. Fender argues that the 2017 invoices discussed during the hearing for the Second Motion to Compel are actually old documents that were "automatically set to update the date upon opening."[31]  Therefore, Ms. Fender argues there is a dispute as to material facts to the extent that MRA is claiming that there are any invoices from Fender post-dating January 15, 2016.

Further, Ms. Fender argues that "there is circumstantial evidence showing that MRA was not honest saying it did not follow through on 1,900+ CCCH leads, including claiming that certain leads were not followed because they were over ten years old . . . ."[32]  Ms. Fender states that the leads had significant reported income and there is "simply no good business reason why those potentially lucrative leads were not pursued."[33]  As such, Ms. Fender argues that the Court should permit a jury to determine whether to believe MRA's assertion about not following leads.

---

[31] Fender Aff. ¶ 2.
[32] *Id.* ¶ 4.
[33] *Id.* ¶¶ 6-9.

## III.  LEGAL STANDARD

The standard of review on a motion for summary judgment is well-settled.  The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[34] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[35]  If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[36]

The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[37]  If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[38]

## IV.  DISCUSSION

Under Delaware law, to prove a breach of contract claim, the plaintiff must show: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages.[39]  A party harmed by a breach of contract is entitled to compensation that will place that party in the same position that the party would have been in if the other party had performed under the contract.[40]

---

[34] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).

[35] *Id.*

[36] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[37] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).

[38] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

[39] *Interim Healthcare v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).

[40] *See E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 446 (Del. 1996).

MRA has a contractual obligation to pay Ms. Fender where MRA receives money from the State relating to Ms. Fender's leads. The Parties dispute whether MRA breached that obligation. If MRA did breach the contractual obligation, then Ms. Fender suffered damages to the extent MRA failed to pay her for her leads.

The core issue for the Motion is whether MRA paid Ms. Fender for all leads where MRA received money from the State or if there is a dispute of material fact. This is actually what this civil action is about. Ms. Fender states that she has not received any payment from MRA since February 1, 2016. Ms. Fender notes that MRA has not produced any checks written to Ms. Fender. Further, Ms. Fender states that she moved during or after her employment with MRA. Therefore, Ms. Fender may not have received and cashed the post February 1, 2016 checks sent by MRA to the old address.

Based on the evidence produced in support of the Motion and the Answer, the Court holds that there is genuine issue as to a material fact concerning the following payments (the "Ten Payments"):

- Mark Fritschle/Condominium Realty in amount of $464.74 or $429.37;

- Colony at Glasgow in amount of $82.31;

- Hematology Realty in amount of $145.05 or $109.68;

- Sheri Smith in amount of $821.69 or $492.13;

- Bendler Property in amount of $263.22 or $196.22;

- Exit Shore Realty in amount of $263.22 or $71.94;

- Jacob Kretzing in amount of $134.60;

- Mark Stabile in amount of $54.54;

- Unlimited Realty in amount of $38.89 or $28.82; and

8

- Windsor Development in amount of $165.94 or $67.06.

Given Ms. Fender's affidavit, the Court finds there is a genuine issue of material fact as to whether Ms. Fender was not paid the entire amounts due her as to the Ten Payments.

Next, Ms. Fender argues that MRA's failure to pursue leads regarding Gary Bolis, owner of Bolis Properties and Colony at Glasgow, is suspect. MRA told Ms. Fender that MRA was not going to pursue Gary Bolis.[41] However, MRA did pursue leads regarding Mr. Bolis. In fact, on November 2, 2015 and July 13, 2015, MRA informed Ms. Fender that it anticipated that Mr. Bolis would reach a settlement agreement for a payment plan for past-due taxes.[42] In the July 13, 2016 email, MRA stated that Mr. Bolis' outstanding amount due on his 2004 taxes totaled $146,551.61.

Ms. Fender also "doubt[s] MRA's representations that it decided not to pursue over 1,900 leads of high net-worth individual and entities" regarding CCCH leads. Ms. Fender finds it suspect that not all leads were followed because some of MRA's reports decided not to pursue CCCH leads because they were over ten years old. However, Ms. Fender notes that there were leads between two and nine years old. Further, MRA did not audit leads claiming that the lead did not file separately but with a parent corporation, but Ms. Fender states that the company did file an independent federal return. Ms. Fender states that there is not "rational business reason why MRA did not follow through on these potentially lucrative" leads.[43]

MRA has provided information that demonstrates that no monies were received that relate to collections from Mr. Bolis or the CCCH leads. Moreover, Ms. Fender fails to submit

---

[41] Ans at 3.
[42] Fender Aff., Ex. B.
[43] *Id.* ¶ 9.

any evidence that demonstrates compensation received by MRA from leads referred by Ms. Fender regarding the CCCH or Mr. Bolis leads.

Ms. Fender relies on two cases for the proposition that circumstantial evidence may create a dispute of material fact and that alternative explanations for the circumstances is a question of fact. First, Ms. Fender relies on *Koons v. XL Ins. America, Inc.* for the proposition that circumstantial evidence may create a genuine issue of material fact.[44] Although the record may rely on circumstantial evidence to create a genuine issue of material fact, the circumstantial evidence must be sufficient to "allow a jury to find for the nonmovant. . . ."[45] Further, "nothing in [Federal] Rule 56 prevents [plaintiff] from creating a genuine issue of material fact by pointing to sufficiently powerful countervailing circumstantial evidence."[46]

Next, Ms. Fender relies on *Block Financial Corp. v. Inisoft Corp.* for the proposition that alternative explanations for something are determinations that are best suited for the jury.[47] In *Block*, the parties disputed the meaning of emails.[48] Counterclaim plaintiff argued that the emails showed the counterclaim defendant's bad faith.[49] Counterclaim defendant argued that the emails suggested that there was no bad faith.[50] Both positions were reasonable interpretations of the emails and the Court determined that the jury is best suited to determine the meaning of the emails.[51]

In both *Block Financial Corp.* and *Koons*, the party opposing summary judgment relied upon evidence, either circumstantial or direct, when arguing that there was a genuine issue of

---

[44] *Koons v. XL Ins. Am., Inc.*, 516 Fed. Appx. 217, 221 (3d Cir. 2013).
[45] *Id.*
[46] *Id.* at 222.
[47] *Block Fin. Corp. v. Inisoft Corp.*, 2006 WL 3240010, at *4 (Del. Super. Oct. 30, 2006).
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*

10

material fact. Ms. Fender failed to produce any evidence in support of her claim that MRA received payment for collections on the Mr. Bolis or CCCH leads. That something is suspicious or bad business is not enough at this stage of the proceedings. This is especially true when MRA produced documents that show payments made to MRA by the State of Delaware. MRA did not produce any documents that any payments made in connection with Mr. Bolis or the CCCH leads. In addition, Ms. Fender did not provide the Court with any other documents that show MRA received any were payments made in connection with Mr. Bolis or the CCCH leads. Absent any such evidence, Ms. Fender fails to create a genuine issues of material facts concerning Mr. Bolis or the CCCH leads. As such, the Court finds that summary judgment in favor of MRA is appropriate on these claims.

## V. CONCLUSION

The Court concludes that MRA has demonstrated cause for partial relief under the Motion regarding all payments and issues other than the Ten Payments. Trial will proceed only as to the Ten Payments and what amounts Ms. Fender may, or may not, be due in connection with the Ten Payments.

Dated: February 13, 2018
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress

11